**In re MUSICLAND HOLDING CORP., et al., Debtors.**

**No. 06–10064 (SMB).**

United States Bankruptcy Court, S.D. New York.

March 13, 2007.

Scott Cole & Associates, PC (Scott Edward Cole, Esq., Matthew R. Bainer, Esq., Of Counsel), Oakland, CA, for the Proposed Store Manager Class.

Curtis, Mallet–Prevost, Colt & Mosle, LLP (Andrew M. Thau, Esq., Of Counsel), New York, NY, for the Debtor.

Hahn & Hessen, LLP (Mark T. Power, Esq., Edward L. Schnitzer, Esq., Of Counsel), New York, NY, for the Official Committee of Unsecured Creditors.

## MEMORANDUM DECISION DENYING MOTION FOR CLASS CERTIFICATION

STUART M. BERNSTEIN, Chief Judge.

Tracy Kirkman and Taggert Strickland (the "Movants") filed a class proof of claim, and now move to certify a class consisting of in-store managers formerly employed in the debtors' California stores. The Movants claim that the proposed class was deprived of overtime pay and other overtime benefits in violation of California law. For the reasons that follow, the motion to certify the class, as presently proposed, is denied.

## BACKGROUND

At all relevant times, the debtors (collectively, "Musicland") were engaged in the retail sale of music, movies, games, and other entertainment-related products. Musicland operated hundreds of retail stores throughout the United States. Kirkman was employed by Musicland be-

tween June 1993 and September 2005, and during part of that period, worked at a Sam Goody store in Thousand Oaks, California. (*Declaration of Tracy Kirkman*, dated Nov. 20, 2006, at ¶ 2)(*see* ECF Doc. # 1332.) Strickland was employed by Musicland from November 1999 through October 2005, and during that period, worked at stores located in various California locations. (*Declaration of Taggert Strickland*, dated Nov. 20, 2006, at ¶ 2) (*see* ECF Doc. # 1332.)

On or about September 9, 2005, Kirkman filed a class action against Musicland and 25 "Doe" defendants in California state court on behalf of all California in-store managers. (*Notice of Motion; Memorandum of Points and Authorities in Support of Representative Plaintiffs' Motion for Class Certification*, dated Nov. 27, 2006 ("*Certification Motion*"), at 1)(ECF Doc. # 1332.) On or about October 12, 2005, Kirkman and Strickland filed an amended complaint. (*Id.*) The gravamen of the class claim was that Musicland failed to make overtime payments and provide other overtime benefits to the in-store managers, as required under various provisions of California law. The class action was pending on January 12, 2006, when Musicland filed its chapter 11 petition in this Court. The filing automatically stayed the class action, and a class was never certified.

### A. The Bar Date Notice and the Proofs of Claim

On February 1, 2006, the Court signed an order (the "Bar Date Order") fixing May 1, 2006, as the deadline for filing prepetition claims.[1] The Bar Date Order directed Musicland to send a copy of the notice of the bar date (the "Bar Date Notice"), *inter alia*, to "all known holders of claims listed on the Schedules," and to

---

1. *See Order Establishing Deadline for Filing Proofs of Claim and Approving Form and* *Manner of Notice Thereof,* dated Feb. 1, 2006 (ECF Doc. # 343.)

"all parties to litigation with the Debtors." It does not appear that Musicland sent a copy of the Bar Date Notice to Scott Cole & Associates, APC (the "Cole Firm"), the proposed class counsel and the Movants' lawyers, although Musicland Group, Inc. had scheduled the Cole Firm as a creditor holding a contingent, disputed and unliquidated claim. (Sched. F, at 14)(ECF Doc. # 4, filed in case no. 06–10072.)

Nevertheless, and although not required to do so, Musicland sent a copy of the Bar Date Notice to all persons employed by Musicland during 2005. (*Opposition of the Official Committee of Unsecured Creditors to Representative Plaintiffs' Motion for Class Certification,* dated Jan. 18, 2007 ("*Committee's Objection*"), at ¶ 5)(ECF Doc # 1456.) The relevant Certificate of Mailing, dated Feb. 1, 2006 (ECF Doc. # 357), confirms that Musicland sent the Bar Date Notice and proof of claim forms to Kirkman, (*id.,* Ex. B–3, at 429),[2] and to Strickland. (*Id.,* Ex. B–4, at 734.)

In addition, the Bar Date Order required Musicland to publish the Bar Date Notice in USA Today (National Edition) and a trade publication acceptable to the Official Committee of Unsecured Creditors (the "Committee") at least 25 days prior to the bar date. The Committee alleges, upon information and belief, that Musicland published the Bar Date Notice in USA Today and Rolling Stone Magazine. (*Committee's Objection,* at ¶ 5.) The Court has not, however, been able to locate a certificate of publication in the electronic case file.

Kirkman filed an individual claim prior to the bar date, asserting a wage priority in the sum of $4,404.97 and a general unsecured claim in the amount of $101,941.23. (*Certification Motion,* Ex.

B.) Strickland also filed an individual proof of claim immediately before the deadline, asserting a wage priority in the sum of $4,208.06 and a general unsecured claim in the sum of $91,300.34. (*Id.,* Ex. C.) Finally, the Movants filed the class claim before the bar date, asserting a priority wage claim in the amount of $1,262,418.30 and a general unsecured claim in the sum of $13,272,176.61. (*Id.,* Ex. D.) The three claims sought overtime pay and benefits incurred between September 19, 2001 and January 6, 2006.[3] The Cole Firm signed all three claims, and its address was listed as the creditors' address on the individual claims.

**B. The Plan**

Musicland filed its *Disclosure Statement For Second Amended Joint Plan of Liquidation of Musicland Holding Corp. and Its Affiliated Debtors* (the "Disclosure Statement") and its *Second Amended Plan of Liquidation of Musicland Holdings Corp. and its Affiliated Debtors* (the "Plan") on October 13, 2006. (*See* ECF Doc. # 1219.) According to the approved Disclosure Statement, the Secured Trade Creditors, the principal creditor group, held allowed claims in the approximate amount of $170 million. (*See* ECF Doc. # 1221, Attachment A, at 19.) The prepetition claim was secured by a lien on Musicland's inventory, (*see Affidavit of Craig Wassenaar, Chief Financial Officer of Musicland Holding Corp., in Support of First Day Motions, Pursuant to Local Bankruptcy Rule 1007–2,* sworn to on Jan. 13, 2006, at 7) (ECF Doc. # 41), and the Secured Trade Creditors also received a replacement lien on the estates' post-petition assets as adequate protection for the use of their cash collateral. (Disclosure Statement, Art. III.C.7, at 12.)

---

**2.** The page number in any certificate of service cited in this opinion refers to the page number of the electronic document.

**3.** As noted, neither Movant worked for Musicland during 2006.

The Secured Trade Creditors were undersecured, and Musicland could not confirm a Plan unless they agreed to forgo part of the distribution to which they would otherwise be entitled. The Plan reflects such a deal. It provides, in relevant part, that the Secured Trade Creditors will give up enough to allow Musicland to satisfy in full the administrative and priority debt on the effective date of the confirmed Plan, and thereby meet the requirement of 11 U.S.C. § 1129(a)(9). There is, however, a significant condition precedent to confirmation: "Allowed Administrative Claims and Allowed Priority Tax Claims shall not exceed $5.8 million in the aggregate." (Plan, Art. 11.A.5, at 26.) The Disclosure Statement estimates that the aggregate administrative and priority debt would not exceed $500,000. (Disclosure Statement, Art. IV.B.1, at 18.) In addition, the Plan states that the general unsecured creditors will not receive an immediate cash payment, and instead, will be entitled to share, *pro rata*, in potential future distributions from any net proceeds realized through the litigation of certain causes of action held by Musicland.[4] (Plan, Art. 4.D, at 12.)

The Court approved the Disclosure Statement on October 13, 2006, and sched-uled the confirmation hearing for November 28, 2006.[5] Musicland sent copies of the Plan, the Disclosure Statement, notice of the confirmation hearing and ballots to Kirkman and Strickland, c/o the Cole Firm. (*See Certificate of Mailing*, Ex. C, at 262, 294) (ECF Doc. # 1246.)[6] Neither Strickland nor Kirkman voted, but the Plan was overwhelmingly accepted, *see* 11 U.S.C. 1126(c), by those who did.

The Court conducted a confirmation hearing on November 28, 2006. At the conclusion of the hearing, the Court found that Musicland satisfied all requirements for confirmation under 11 U.S.C. § 1129 except for feasibility. *See id.* at § 1129(a)(11). The unresolved administrative and priority claims exceeded $5.8 million, and Musicland lacked the financial wherewithal to reserve for the disputed amounts. Accordingly, Musicland had to reduce those claims through a combination of objection or negotiation, or both. The trial of the feasibility issue was adjourned, and has not resumed.

## C. The Certification Motion

Approximately 10 days later, on December 7, 2006, the Movants filed the Certification Motion. Their submission deals, for the most part, with the satisfaction of Rule

4. The causes of action include avoidance actions ("any and all actions, proceedings, claims and causes of action of a debtor or debtor in possession under chapter 5 of the Bankruptcy Code, but excluding Secured Creditor Disallowance Actions"), (*see* Plan, Art. 1A.2, at 2), and "any and all claims or causes of action belonging to the Debtors or their Estates or the Creditors' Committee, excluding Secured Creditor Assets." (*See id.*, Art. 1.A.41, at 5.)

5. *See Order (A) Approving Disclosure Statement; (B) Fixing a Voting Record Date; (C) Approving Solicitation and Voting Procedures With Respect To Debtors' Chapter 11 Liquidating Plan; (D) Approving Form of Solicitation Package and Notices; (E) Scheduling Certain*

*Dates In Connection Therewith; and (F) Extending Exclusivity Period To Solicit Votes On the Plan*, dated Oct. 13, 2006 (ECF Doc. # 1221.)

6. Musicland actually served Kirkman and Strickland, individually, and as class representatives, twice. Their names, c/o the Cole Firm, appear on Exhibit A to the same *Certificate of Mailing*, at 206, 219. The creditors on Exhibit A were deemed to be unimpaired, and did not receive a ballot. Instead, they received a notice of non-voting status as well as the general notice for the objection and voting deadlines and the date of the confirmation hearing. This notice presumably related to the wage priority claims, which were unimpaired and deemed to accept the Plan.

23(a) of the Federal Rules of Civil Procedure as well as Rule 23(b)(1), (b)(2) and (b)(3). (*Certification Motion,* at 6–18.) In addition, they argue that the Court should exercise its discretion to apply Rule 23 because this district favors class proofs of claim, (*see id.,* at 3), Musicland did not schedule any of the employee/class members or give them notice of the filing or the bar date, (*id.,* at 4), the claims are extremely high and it would be unfair to exclude them from participation in the case or the distribution of assets, (*id.,* at 4–5), and the class claim will promote efficient judicial management. (*Id.,* at 5.)

The Committee opposed the motion, and Musicland joined in the opposition. (*See Debtors' Joinder and Objection to the Representative Plaintiffs' Motion for Class Certification,* dated Jan. 18, 2006 [*sic*])[7] (ECF Doc. # 1459.) The Committee contends that the Movants' waited too long to seek certification, and allowing the class claim now will interfere with the administration of the estate, and probably doom the Plan. (*Committee's Objection,* at ¶¶ 17–21.) In addition, the in-store managers received actual or constructive notice of the bar date, and granting the motion would effectively extend the bar date for creditors that sat on their rights. (*Id.,* at ¶¶ 22–25.) Moreover, at least 24 of the California in-store managers executed releases. (*Id.,* at ¶ 26.) Finally, the Movants' failed to establish that the class action is superior to any other method, FED. R.CIV.P. 23(b)(3), (*Committee's Opposition,* at ¶¶ 28–29), or that there are questions of law or fact common to the class. FED. R.CIV.P. 23(a)(2). (*Committee's Opposition,* at ¶¶ 30–33.)

7. This document should be dated January 18, 2007.

8. Bankruptcy provides the same procedural advantages as a class action. *See American Reserve Corp.,* 840 F.2d at 489; *Kahler v. FIRSTPLUS Fin., Inc. (In re FIRSTPLUS Fin.,*

## DISCUSSION

■ While class proofs of claim in bankruptcy are not prohibited, *see Iles v. LTV Aerospace & Defense Co. (In re Chateaugay Corp.),* 104 B.R. 626, 634 (S.D.N.Y.1989), *appeal dismissed,* 930 F.2d 245 (2d Cir.1991); *In re Woodward & Lothrop Holdings, Inc.,* 205 B.R. 365, 369 (Bankr.S.D.N.Y.1997); 10 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 7023.01, at 7023–3–4 (15th ed. rev.2006), the right to file one is not absolute. *In re Ephedra Prods. Liab. Litig.,* 329 B.R. 1, 4–5 (S.D.N.Y.2005); *Bailey v. Jamesway Corp. (In re Jamesway Corp.),* No. 95 B 44821, 1997 WL 327105, at *3–4 (Bankr. S.D.N.Y. June 12, 1997); *In re Sacred Heart Hospital of Norristown,* 177 B.R. 16, 22 (Bankr.E.D.Pa.1995) (noting that the class action device may be utilized in appropriate contexts, but should be used sparingly). Federal Civil Rule 23 does not apply automatically to contested matters, *see* FED. R. BANKR.P. 9014, and the decision to extend its application is committed to the Court's discretion. *Reid v. White Motor Corp.,* 886 F.2d 1462, 1470 (6th Cir. 1989), *cert. denied,* 494 U.S. 1080, 110 S.Ct. 1809, 108 L.Ed.2d 939 (1990); *Chateaugay Corp.,* 104 B.R. at 633; *In re Craft,* 321 B.R. 189, 198 (Bankr.N.D.Tex.2005). As the *Ephedra* court observed, "bankruptcy significantly changes the balance of factors to be considered in determining whether to allow a class action and ... class certification may be 'less desirable in bankruptcy than in ordinary civil litigation.'" 329 B.R. at 5 (quoting *In re American Reserve Corp.,* 840 F.2d 487, 493 (7th Cir.1988)).[8]

*Inc.),* 248 B.R. 60, 71–72 (Bankr.N.D.Tex. 2000). In fact, it provides more advantages. Creditors, even corporate creditors, don't have to hire a lawyer, and can participate in the distribution for the price of a stamp. They need only fill out and return the proof of claim sent with the Bar Date Notice. Fur-

Accordingly, the proponent of a class claim must (1) make a motion to extend the application of Rule 23 to some contested matter, (2) satisfy the requirements of Rule 23, and (3) show that the benefits derived from the use of the class claim device are consistent with the goals of bankruptcy. *See Woodward & Lothrop Holdings, Inc.*, 205 B.R. at 369.

■ Here, the Movants' made a motion, although the Committee contends that it came too late. There is some question, however, whether the motion could have been made any sooner. As noted, the Court can make Rule 23 applicable in a contested matter, but the filing of a proof of claim does not trigger a contested matter. Instead, the objection to the claim commences the contested matter. *Woodward & Lothrop Holdings, Inc.*, 205 B.R. at 369–70. Thus, unless another contested matter is already pending which would provide a basis for the application, one view is that the motion to apply Rule 23 must await a claim objection. *Class in the Charter Sec. Litig. v. The Charter Company (In re Charter Co.)*, 876 F.2d 866, 874 (11th Cir.1989), *cert. dismissed*, 496 U.S. 944, 110 S.Ct. 3232, 110 L.Ed.2d 678 (1990).

Other courts have taken the more practical view that the class representative can move at any time for a declaration that it may file a class proof of claim. *See Ephedra Prods.*, 329 B.R. at 6 (requiring the debtor to object to a claim before applying Rule 23 would "mean that a debtor and others with interests adverse to a class claim could prevent the claimant from asking the bankruptcy court to apply Rule 23 simply by withholding their objections until the eve of confirmation and then move to expunge the class claim on the grounds that applying Rule 23 would unduly delay distribution"); *In re Computer Learning Ctrs., Inc.* 344 B.R. 79, 87 (Bankr.E.D.Va. 2006)("[T]he proponent of the class proof of claim must seek and must obtain application of Rule 7023. The proponent is the one who wants the court to enter an order. Without that order, Rule 7023 is not applicable to the proof of claim and a class proof of claim is improper."); *In re Craft*, 321 B.R. 189, 198–199 (Bankr.N.D.Tex. 2005)(the burden is on the class representatives to raise the issue of class certification). The class representative, in this regard, is more likely to be aware of the pendency of the class claim. Here, approximately 2,800 claims were filed prior to the bar date, (Disclosure Statement, at 10), and the Committee confessed at oral argument that it was not even aware of the class claim until the Movants filed the current application. (Transcript of hearing, held Jan. 23, 2007 ("Tr.(1/23)"), at 15.) While that is not an excuse, it illustrates one problem of waiting for a claim objection.

Furthermore, the language of the Bankruptcy Code and Rules leaves unanswered whether an objection is even required. Section 501(a) states that a creditor may file a proof of claim, and "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed," unless a party in interest objects. 11 U.S.C. § 502(a). The creditor or its authorized agent must execute the claim. FED. R. BANKR.P. 3001(b). Finally, a proof of claim executed and filed in accordance with the Federal Bankruptcy Rules constitutes *prima facie* evidence of the validity

thermore, claims are "deemed allowed" under § 502(a) in the absence of an objection, in which case discovery and fact-finding are avoided altogether. Finally, where the debtor is liquidating and its managers have moved on to other jobs, the class action does not serve a deterrent effect. *See American Reserve Corp.*, 840 F.2d at 491; *Ephedra Prods.*, 329 B.R. at 9 (deterrence is not a factor where the corporate debtor is in liquidation).

and amount of the claim. FED. R. BANKR.P. 3001(f).

By certifying the class, a court effectively ratifies the agent's authority *nunc pro tunc. American Reserve*, 840 F.2d at 493 ("If the court certifies the class, ... the self-appointed agent has become 'authorized', and the original filing is effective for the whole class (the principals)."); *accord Chateaugay Corp.*, 104 B.R. at 630. Conversely, if the court declines to apply Rule 23 to the proof of claim, the putative agent never obtains the requisite authority. *American Reserve*, 840 F.2d at 493; *Chateaugay Corp.*, 104 B.R. at 630; *In re Kaiser Group Int'l, Inc.*, 278 B.R. 58, 63 (Bankr.D.Del.2002). Until certification, the claim is in limbo. "A proof of claim filed by a party who is not a creditor is not a properly filed proof of claim." *FIRST-PLUS Fin.*, 248 B.R. at 70; *accord In re Ellington*, 151 B.R. 90, 95 (Bankr. W.D.Tex.1993)(a proof of claim filed by assignor of claim "was not 'properly filed,' as First Republic [the assignor] could not legitimately even *sign* a proof of claim representing that it owned a claim against the estate (for it did not)"); *cf. In re Abijoe Realty Corp.* 943 F.2d 121, 125 (1st Cir.1991)("a facially meritless proof of claim which plainly evidences no 'right to payment,' disputed or otherwise, cannot confer 'creditor' standing upon the holder.") The proof of claim, improperly filed or improperly signed, is not *prima facie* evidence of the debt, and until class certification, may not even be a "filed" claim within the meaning of 11 U.S.C. § 502(a). In that case, no objection would be necessary, and it would be incumbent on the putative class representative to raise the issue.

In any event, the Movants eventually made the motion before Musicland (or the Committee) ever filed a claim objection.

Neither side has argued that the motion is premature. At oral argument, the Movants' counsel stated that they finally made the motion because they were "alarmed" that Musicland was making pre-plan distributions without taking the class claim into account.[9] (Tr. (1/23), at 10–11.) Obviously, they could have made the motion sooner. Although the delay does not automatically disqualify the class claim, it bears on the exercise of the discretion whether to apply Rule 23.

## A. The Requirements of Rule 23

The party seeking class certification must satisfy the four requirements under Federal Civil Rule 23(a), and one of the subparagraphs of Rule 23(b). The Committee contends that the Movants failed to satisfy the commonality requirement under FED. R. CIV. P. 23(a)(2), or the superiority requirement of FED.R.CIV.P. 23(b)(3). Starting with the last point, the Movants also relied on Rule 23(b)(1) and (b)(2). (*Certification Motion*, at 10–11.) The Committee has not contested the Movants' satisfaction with these provisions, and hence, we move on to Rule 23(a)(2).

Rule 23(a)(2) requires the court to decide that "there are questions of law or fact common to the class." According to the Committee, the class includes the holders of priority and general unsecured claims. (*Committee's Objection*, at ¶ 31.) These two groups are classified separately under the Plan, and receive vastly different treatment. The priority wage claims will receive 100%. The unsecured creditors, on the other hand, will receive nothing initially, (*Committee's Objection*, at ¶¶ 31–32), and their distribution, if any, must await the recovery of litigation proceeds. The Committee concludes, "[s]ince the allowance of the priority claims sub-

---

9. The Court had authorized distributions to the Secured Trade Creditors, and had also awarded interim professional fees and expenses.

stantially in excess of the aggregate cap for priority claims could potentially derail the Plan and any likelihood of general unsecured creditors receiving any distributions in these cases, the two groups have a direct conflict of interest." (*Committee's Objection,* at ¶ 32.)

 The Committee's Rule 23(a)(2) objection is misplaced. The class claim presents the same question applicable to all putative members: is a former in-store manager entitled to overtime pay and other benefits under California law. Instead, the Committee's argument concerns the adequacy of representation. The representative must show that he or she "will fairly and adequately protect the interests of the class." FED.R.CIV.P. 23(a)(4). "Adequacy" has two components: "the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir.2006); *accord Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir.2000). "A conflict or potential conflict alone will not, however, necessarily defeat class certification-the conflict must be 'fundamental.'" *Denney v. Deutsche Bank AG*, 443 F.3d at 268; *Wal–Mart Stores, Inc. v. Visa USA Inc. (In re Visa Check/MasterMoney Antitrust Litig.)*, 280 F.3d 124, 145 (2d Cir.2001). In addition, "the conflict must be more than speculative or hypothetical." 5 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 23.25[2][b][ii], at 23–116 (3d ed.2006); *accord Visa Check/MasterMoney*, 280 F.3d at 145.

 The Committee's objection raises one obvious and one not-so-obvious question concerning the adequacy of representation. The obvious question is whether the class can consist of both priority and general unsecured claims, and whether the Movants, who asserted both types of claims, can represent the class. The conflict is not a real one. If the priority claims exceed the aggregate cap of $5.8 million, the proposed Plan will fail, the secured creditors will be entitled to substantially all of the assets, the case will probably be converted to chapter 7, and neither the priority nor the general unsecured creditors will receive any distribution until the chapter 7 and chapter 11 expenses of administration are paid in full. In all likelihood, this means little or no distribution. Thus, the priority wage and unsecured claims share the same interest in confirming the Plan.

The less obvious question concerns the fact that the Movants appear to be the only in-store managers that filed individual claims. Musicland must vigorously fight the class priority wage claim filed in the approximate sum of $1.26 million. If it loses the fight, it may not be able to meet the $5.8 million cap and confirm the Plan. (Tr. (1/23), at 22–23.) In that event, the priority wage claimants will recover little or nothing.

If the class claim is not aggressively pursued or is ultimately defeated or abandoned, the Movants may still hold individual priority wage claims in the aggregate amount of $8,613.03.[10] At oral argument, Committee counsel suggested that if this was all that was at stake, the Committee might decide to allow the claims rather than incur the cost of litigating the issue of the Movants' entitlement to overtime pay. (Tr. (1/23), at 25.) The decision is the type that bankruptcy lawyers make every day. The rejection or disallowance of the class claim makes it more likely that the Plan will be confirmed, and depending on the

---

10. A ruling that in-store managers are not entitled to overtime pay or benefits would also defeat the Movants' individual claims.

On the other hand, striking the class claim on some other ground might not affect the Movants' individual claims.

reason for the rejection or disallowance, that the Movants will receive a 100% distribution on their priority wage claims. Conversely, the successful prosecution of the class claim makes it more likely that the Movants will not receive any distribution.

This conclusion is based on two assumptions: the allowance of the $1.26 million priority wage claim will doom the Plan, and the Committee will probably not object to the individual priority wage claims filed by the Movants if there is no looming class claim. These appear to be reasonable assumptions, and I seriously question whether the Movants and their counsel can be counted on to vigorously prosecute the class claim and adequately represent the proposed class. It is unnecessary to resolve this question, however, because I decline to exercise my discretion to extend the application of Rule 23 to the class claim as presently proposed.

## B. The Bankruptcy Considerations

▮▮▮ Several factors inform the Court's decision whether to extend the application of Rule 23 to a proof of claim. These include (1) whether the class was certified pre-petition,[11] *Trebol Motors Distrib. Corp. v. Bonilla (In re Trebol Motors Distributor Corp.)*, 220 B.R. 500, 502 (1st Cir. BAP 1998)(class certified by district court may file class proof of claim); *Jones v. Amdura Corp. (In re Amdura Corp.)*, 170 B.R. 445, 451 (D.Colo.1994)(members of certified class are "creditors" entitled to proper notice); *Craft*, 321 B.R. at 198 (if class has not been certified, the court faces different issues); *Jamesway Corp.*, 1997 WL 327105, at *10 (noting that in the absence of pre-petition certification, class members lacked "reasonable expec-

tation" that they did not have to comply with the bar date); *Sacred Heart*, 177 B.R. at 22 (classes certified pre-petition are the "best candidates" for a class proof of claim), (2) whether the members of the putative class received notice of the bar date, *Sacred Heart*, 177 B.R. at 22("[I]f the putative unnamed class members have clearly received actual or constructive notice of the bankruptcy case and the bar date, denial of the . . . class proof of claim device appears advisable."), and (3) whether class certification will adversely affect the administration of the case. *Ephedra Prods.*, 329 B.R. at 5 (a pervasive theme in deciding whether to apply Rule 23 is avoiding undue delay in the administration of the case.) The latter often centers on (a) the timing of the motion for certification, *Ephedra Prods.*, 329 B.R. at 5 ("Although no waiver was involved, counsel for the class claimants bear primary responsibly for the 'gumming up' by not affirmatively moving under Rule 9014(c) for class certification."); *Computer Learning Ctrs.*, 344 B.R. at 89 ("A Rule 7023 motion should be filed as soon as practicable and should be denied if it comes so late as to prejudice any party."); *Craft*, 321 B.R. at 199 (putative class members waited too long to invoke Rule 23); *Woodward & Lothrop*, 205 B.R. at 370 ("As the case moves toward its conclusion, it is more likely that a delay in resolving the certification issue will interfere with the administration of the estate"); *Sacred Heart*, 177 B.R. at 23("Timing is also significant. The most propitious time for filing a motion for class recognition is before a bar date is established, since the bar date is effectively uprooted in part by an extension of the bar date for a favored class of creditors."), and (b) whether a plan has been negotiated, voted on or confirmed.

---

11. Some decisions erroneously conflate the satisfaction of the Rule 23 criteria with the separate question, unique to bankruptcy, whether an otherwise certified (or certifiable)

class should be permitted to file a class proof of claim. *See Craft*, 321 B.R. at 198 n. 15 (discussing cases).

*Ephedra Prods.*, 329 B.R. at 5(potential interference with timely distribution is grounds for denying motion where plan has already been submitted for creditor vote); *Craft*, 321 B.R. at 199(allowing class claim would delay plan process and claim objection process); *Sacred Heart*, 177 B.R. at 24(granting the motion would "effect very substantial and apparently unwarranted disruption to the administration of the Debtor's bankruptcy case, in which there is presently a plan before us for imminent confirmation").

██ The first two considerations—prepetition certification and notice of the bar date—are critical. For this reason, putative members of an uncertified class who received actual notice of the bar date but did not file timely claims are the least favored candidates for class action treatment. *Sacred Heart* and *Jamesway*, both of which involved proposed classes of former employees holding priority claims, illustrate this point.

In *Sacred Heart*, the debtor's former employees sought to file a class claim arising under the Workers Adjustment and Retraining Notification Act (the "WARN Act") after the debtor shut down and filed for bankruptcy. No class was certified pre-petition. 177 B.R. at 18. The former employees received actual notice of the bar date, and 120 former employees filed individual proofs of claim. After making an unsuccessful motion to prosecute a class claim, the attorney for the putative class filed a second motion seeking permission to file a class proof of claim and to extend the bar date. *Id.* at 19–20.

The court concluded that a class proof of claim could be used in the appropriate context, *id.* at 22, but denied the motion to allow the prosecution of the class proof of claim. The putative class had not been certified pre-petition, *id.* at 23, and most, if not all of the unnamed class members had received actual notice of the bar date. *Id.* at 24. The court noted the irony of effectively extending the bar date for the benefit of those who sat on their rights, and also paying class counsel, at the expense of the vigilant creditors who observed the bar date. *Id.; accord FIRSTPLUS Fin.*, 248 B.R. at 73 (unfair to permit "a second bite at the apple for those creditors who received notice of the bankruptcy filing and of the Claims Bar Date, and who chose not to file"); *In re Bicoastal Corp.*, 133 B.R. 252, 255 (Bankr.M.D.Fla.1991)(where putative class members have received notice and failed to file a timely claim, "to permit the Claimants to file a claim as members of a class would enable them to accomplish indirectly what they could not accomplish directly"). Finally, the class representative delayed in filing the pending motion, a plan was presently before the court for imminent confirmation and allowing the class claim would "effect very substantial and apparently unwarranted disruption to the administration of the Debtor's bankruptcy case." *Sacred Heart*, 177 B.R. at 24.

*Jamesway* echoed this reasoning. There, the putative class of WARN Act claimants commenced a class action one day before bankruptcy, and was never certified. The debtor gave actual and constructive notice of the bar date to the class members, although class counsel contended that many failed to submit claims out of ignorance of the bankruptcy court's procedures. 1997 WL 327105, at *2. Drawing extensively from the *Sacred Heart* decision, the *Jamesway* court focused on the unfairness of extending the bar date for creditors who had received actual notice of the bar date.[12] *See id.* at *5–6. In addition, certification would effectively extend

---

**12.** The representatives attacked the adequacy of the bar date notice because it did not specifically inform the former employees that they might have WARN Act claims. The

the bar date for those employees who failed to file a timely claim, without a showing of excusable neglect. *Id.* at *10. Importantly, no class was certified pre-petition, and as a result, no putative class member should or could have had a reasonable expectation that they did not have to comply with the bar date. *Id.* Accordingly, the court denied the certification motion without considering whether the movants satisfied Rule 23. *Id.*

■ The present case is factually analogous. First, the putative class of former employees was not certified pre-petition, and the California court did not send a formal notice regarding the class action to the putative class members. (Tr. (1/23), at 5.) Furthermore, although the Cole Firm stated that it had conducted extensive pre-filing interviews, (*id.* at 5–6), class counsel did not tell the putative class members not to file claims, or for that matter, notify them about the bankruptcy proceedings. (*Id.* at 35–36.) Thus, the putative class members did not have a reasonable expectation that a class claim would be filed that would protect their rights, or that they did not have to comply with the bar date.

Second, all of the priority wage creditors received actual notice of the bar date. Given the 180–day reach back under § 507(a)(4)(i), the priority wage claims accrued within six months of the petition date, in 2005. Although Musicland did not mail the Bar Date Notice to the Cole Firm, which it had scheduled, and may not have published the Bar Date Notice, these omissions are harmless since Musicland sent actual notice of the bar date to the 2005 employees, including the Movants.

Despite actual notice, the Movants were the only putative class members that filed individual claims by the bar date. Class counsel speculated that the class members might not have been aware of their rights, (*id.*), but that problem is not unique to class actions. Moreover, if the Cole Firm conducted as many pre-filing interviews as it claimed, many of the class members should have been aware that they might have claims. Yet only the Movants filed claims. Allowing the class proof of claim would extend the bar date for those creditors who failed to file a timely claim to the prejudice of those creditors who did.[13]

Third, the class claim would seriously delay the administration of the case, a fact exacerbated by the delay in making the certification motion. The Movants and the Cole Firm obviously knew about the case and the bar date. By the time they made their certification motion, Musicland had negotiated and filed a Plan, the Court had approved the Disclosure Statement, the creditors had voted on the Plan and the Court had begun the confirmation hearing. The determination of the remaining issue, feasibility, turns on a showing that the priority and administrative claims will not exceed the $5.8 million cap. Musicland has successfully prosecuted several omnibus claims objections with a view toward reducing the priority and administrative debt.

The introduction into the mix of a $1.26 million priority wage claim, at this time, would extend these proceedings indefinitely. Musicland or the Committee would first have to litigate the legal issue—whether the in-store managers are eligible for overtime pay under California law. If they lost, they would then have to examine each potential priority overtime claim, and litigate to reduce those that could not be

court rejected the argument, stating that the debtor "was not bound to advise employees of the exact nature of their claims." *Jamesway,* 1997 WL 327105, at *9.

**13.** Any creditors that did not receive the notice to which they were entitled are free to seek an extension of the bar date.

supported. The other creditors—who filed timely claims—would have to await the results of those disputes before they knew whether the Plan could be confirmed and distributions would be made. For all of the foregoing reasons, the priority wage creditors cannot prosecute a class claim.

## C. The pre–2005 Employees

The putative class includes creditors holding overtime claims that arose as far back as September 19, 2001. The notice provided to the pre–2005 employees was equivocal. The Bar Date Order also required publication notice, the Committee says Musicland complied, but there is no evidence, such as a certificate attesting to the publication, filed on the electronic docket. The pre–2005 employees who did not receive actual notice were arguably unknown creditors entitled to publication notice. If they were entitled to notice and did not receive it, their claims would not be discharged, and they could enforce their claims against the reorganized debtor. *See In re Craft,* 321 B.R. at 194. This is small comfort since Musicland is liquidating, and there will not be any assets from which to collect the non-discharged claims.

For present purposes, the Court denies the Movants' motion because they received actual notice of the bar date and filed individual claims. In the event that Musicland failed to provide publication notice in accordance with the Bar Date Order, the Court can direct publication and extend the bar date for those creditors or consider certifying a class of unnoticed, general creditors. Consequently, the Committee is directed to settle an order consistent with this opinion, and schedule a conference to address the remaining issues.